```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LOCAL 98 IBEW COMMITTEE ON         :      CIVIL ACTION
POLITICAL EDUCATION                :
                                   :
           v.                      :
                                   :
PHILADELPHIA BOARD OF ETHICS,      :
et al.                             :      NO. 08-630
```

MEMORANDUM

Bartle, C.J.                                            July 9, 2008

        Plaintiff Local 98 IBEW Committee on Political Education ("COPE") brings this action against defendants: Philadelphia Board of Ethics; J. Shane Creamer, Jr., Chairman of the Philadelphia Board of Ethics; Lynne Abraham, District Attorney of the City of Philadelphia; Thomas Corbett, Attorney General of the Commonwealth of Pennsylvania; Pedro A. Cortes, Secretary of the Commonwealth of Pennsylvania; and the City of Philadelphia. COPE alleges that various provisions of state and local election law violate COPE's rights under the First Amendment to the United States Constitution. Pursuant to the Civil Rights Act, 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C. § 2201, COPE seeks declaratory and injunctive relief prohibiting defendants from enforcing the challenged statutory provisions.

Defendants have each moved to dismiss COPE's amended complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I.

In ruling on a motion under Rule 12(b)(6), the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level ....' " Id. at 232 (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)). In other words, a complaint must contain "enough factual matter (taken as true) to suggest" the elements of the claims asserted. Id. at 234 (quoting Twombly, 127 S. Ct. at 1965). We may consider documents relied on by the complaint as well as matters subject to judicial notice, such as public records. See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1197 (3d Cir. 2003).

II.

Plaintiff COPE is a Pennsylvania corporation organized for the purpose of "advancing the cause of American workers by focusing the government and the public on labor-related issues." COPE engages in both issue advocacy, which it describes as "advocating non-candidate specific issues during the election season," and express advocacy, that is, making "direct expenditures expressly advocating a particular candidate," Am. Compl., ¶ 5.  COPE was created in 1982 to further the political interests of Local 98 of the International Brotherhood of Electrical Workers ("IBEW Local 98"), a Pennsylvania labor union barred by federal and state law from engaging in express advocacy.  See 2 U.S.C. § 441b(a); 25 Pa. Stat. Ann. § 3253(a). IBEW Local 98 was and is legally able to engage in issue advocacy.  See 25 Pa. Stat. Ann. § 3253(a).

COPE concedes that it is a "political committee" under the Pennsylvania Election Code.  A political committee is defined as "any committee, club, association or other group of persons which receives contributions or makes expenditures."  Id. § 3241(h).  An "expenditure" is "the payment, distribution, loan or advancement of money or any valuable thing by a candidate, political committee or other person for the purpose of influencing the outcome of an election."  Id. § 3241(d)(1).  The terms are defined similarly in the challenged provisions of the

Philadelphia Code.  See Phila., Pa., Code § 20-1001(12) & (10). COPE also concedes that all of its expenditures, including those related solely to issue advocacy, "are made 'for the purpose of influencing elections.'"  Am. Compl., ¶ 6.

Political committees are subject to various reporting requirements under both Pennsylvania and local law.[1]  For instance, all political committees must file campaign finance reports with the Commonwealth listing all expenditures over $250. 25 Pa. Stat. Ann. § 3241(a).[2]  At issue here, however, is the related requirement that political committees retain "vouchers or copies of vouchers for all sums expended amounting to more than twenty-five dollars ($25) ...."  Id. § 3246(c).[3]  The vouchers are then subject to mandatory disclosure and public inspection by any person upon written request to the "appropriate supervisory office."  Id.

---

1.  Such groups are also subject to federal campaign finance law, which is not being challenged in this case but remains relevant to our analysis.

2.  Such reports must contain an entry for "each and every expenditure, the date made, the full name and the address of the person to whom made and the purpose for which such expenditure was made."  25 Pa. Stat. Ann. § 3246(b)(4).

3.  Vouchers are the receipts, invoices, notes, and memoranda that substantiate each expenditure made by a political committee. By contrast, the campaign finance reports required under § 3241(a) provide only a summary of a political committee's expenditures.

A state trial court may authorize criminal proceedings against an offending party if a court audit reveals a violation of any provision of the Pennsylvania Election Code.  Id. § 3256(a), (b).  The Commonwealth's Attorney General has prosecutorial jurisdiction over all violations of the Pennsylvania Election Code.  Id. § 3260b(a).  The Secretary of the Commonwealth is required to administer the Pennsylvania Election Code by investigating alleged failures to file required reports, by publishing a list of delinquent filers, and by referring apparent violations to the appropriate enforcement authorities.  Id. § 3259.

The Philadelphia Code incorporates the reporting and disclosure requirements of state law for political committees. The challenged provisions simply mandate that any person filing "receipts or expenditures" pursuant to the Pennsylvania Election Code also provide defendant, the Philadelphia Board of Ethics (the "Board"), with a duplicate copy.  Phila., Pa., Code § 20-1006.  Defendant J. Shane Creamer, Jr. is the Executive Director of the Board.  A political committee that violates the City's campaign finance ordinances, including the duplicate filing requirements, is subject to regulatory fines in the amount of $1500 for each such violation.  Id. § 20-1008.  Additionally, any individual found in violation can be forever disqualified from holding any elected or appointed City office or employment.  Id.

§ 20-612(1). The Philadelphia District Attorney has concurrent prosecutorial jurisdiction with the Attorney General over any violations of the Pennsylvania Election Code that occur in Philadelphia County. 25 Pa. Stat. Ann. § 3260b(c).

It is undisputed that COPE properly filed its campaign finance reports for the 2007 election cycle as required by 25 Pa. Stat. Ann. § 3241(a). It identified approximately $2,500,000 in expenditures. On November 30, 2007, the Board, by and through J. Shane Creamer, Jr., submitted a written request to the Pennsylvania State Bureau of Commissions, Elections, and Legislation (the "Bureau") under § 3246(c) of the Pennsylvania Code for the "vouchers" evidencing all of COPE's expenditures in 2007. The Bureau, as required by statute, forwarded the request to COPE. In response, COPE proposed that it produce vouchers for expenditures it deemed "directed to candidates" and withhold those for expenditures it deemed "issue-oriented." The Board declined to narrow the scope of its request. COPE then filed this lawsuit seeking declaratory and injunctive relief to prohibit the enforcement of 25 Pa. Stat. Ann. § 3246(c) and Phila., Pa., Code § 20-1006 insofar as they compel production of vouchers for expenditures for issue advocacy.

### III.

Plaintiff COPE contends that the disclosure provisions at issue are unconstitutionally vague and overbroad in violation

of the First Amendment to the extent that they may be interpreted to require or do in fact require production of vouchers for a political committee's outlays of funds for purposes of "issue advocacy."[4]

In <u>Buckley v. Valeo</u>, the plaintiffs raised a First Amendment challenge to reporting and disclosure provisions contained in the Federal Election Contribution Act of 1971 ("FECA").  424 U.S. 1 (1976).  That federal statute contained provisions similar to those at issue here and defined relevant terms, such as "political committee" and "expenditure," in a virtually identical way.  <u>Id.</u> at 62-63.  The Supreme Court held that disclosure provisions generally are subject to "strict" and "exacting" scrutiny because they have "the potential for substantially infringing the exercise of First Amendment rights." <u>Id.</u> at 64-66.  As a result, the Government was required to establish a "relevant correlation" or "substantial relation" between the proffered government interests and the burdens imposed.  <u>Id.</u> at 64.  The Government demonstrated that the disclosure provisions serve three important purposes:

> First, disclosure provides the electorate
> with information "as to where political
> campaign money comes from and how it is spent

---

4.  The First Amendment to the United States Constitution states that "Congress shall make no law ... abridging the freedom of speech ...."  U.S. Const. amend. I.  The First Amendment applies to the states as well as to the federal government.  <u>See</u> <u>Gitlow v. New York</u>, 268 U.S. 652 (1925).

>            by the candidate" in order to aid the voters
>            in evaluating those who seek ... office ....
>            Second, disclosure requirements deter actual
>            corruption and avoid the appearance of
>            corruption by exposing large contributions
>            and expenditures to the light of publicity
>            .... Third, ... [the] requirements are an
>            essential means of gathering the data
>            necessary to detect violations of ...
>            contribution limitations ....

Id. at 66-68 (citations omitted). The Court also explained that disclosure provisions are "in most applications the least restrictive means of curbing the evils of campaign ignorance and corruption ...." Id. at 68.

Nonetheless, the Buckley Court expressed concern that the disclosure provisions in FECA advanced the proffered governmental goals only when they regulate "express advocacy," that is, communications advocating the election of a particular candidate. In that circumstance, the relationship between a contributor and a candidate gives rise to a risk of corruption and improper influence. Id. at 74-82. The statute defined "expenditures" as payments above a certain dollar amount made "for the purpose of influencing any election for Federal office ...." 2 U.S.C. § 431(9). The Court concluded that the definition's vagueness carried "the potential for encompassing both issue discussion and advocacy of a political result." Id. at 79. Consequently, the Court adopted a limiting construction for the statutory disclosure provisions applicable to

expenditures by non-candidate individuals and groups other than political committees:

> [W]hen the maker of the expenditure ... is an individual other than a candidate or a group other than a "political committee" ... the relation of the information sought to the purposes of the Act may be too remote.  To insure that the reach of [Section] 434(e) is not impermissibly broad, we construe "expenditure" for purposes of that section ... to reach only funds used for communications that expressly advocate the election or defeat of a clearly identified candidate.

Id. at 79-80.

The Buckley Court then addressed FECA's separate record-keeping and disclosure provision for candidates and groups fitting the statutory definition of political committees.  This provision required that such actors:  (1) retain records of contributions and expenditures, and (2) file detailed quarterly reports containing related financial information which would be made available for public inspection.  The statute defined "political committees" as entities that make "expenditures," 2 U.S.C. § 431(4), thus raising the same constitutional problem discussed above.  The Buckley Court acknowledged that the term "political committee" as defined in the Act could be unconstitutionally vague or overbroad because a court might interpret it to reach groups, such as those "engaged purely in issue discussion," whose activities were less likely to implicate

the stated governmental concerns about quid pro quo relationships and violations of contribution limits.  424 U.S. at 79.

Lower courts addressing the issue had eliminated this possibility of overbreadth not by limiting the definition of "expenditure," as the Court had done with respect to non-candidate individuals and groups other than political committees, but instead by understanding "political committee" to include only organizations "under the control of a candidate or the major purpose of which is the nomination or election of a candidate." Id.  The Buckley Court adopted that construction.  It concluded that "[e]xpenditures of candidates and of 'political committees' so construed can be assumed to fall within the core area sought to be addressed by Congress.  They are, by definition, campaign related."  Id.  Limited in this way, the reporting and disclosure provisions with respect to candidates and political committees were found to pass constitutional muster.  Id.  The above standard became known in the election law context as the "major purpose" test.

The Supreme Court again confronted federal campaign finance reform in McConnell v. FEC, 540 U.S. 1 (2003).  There it rejected a First Amendment challenge to reporting and disclosure provisions of the Bipartisan Campaign Reform Act ("BCRA").  Id. at 189-96.  The McConnell majority explicitly endorsed Buckley's "major purpose" language as a valid test for determining whether

a particular group should be subject to the "general requirement that political committees disclose their expenditures ...." Id. at 170 n.64. Moreover, the Court rejected the notion that "the First Amendment erects a rigid barrier between express advocacy and so-called issue advocacy ...." Id. at 193. Instead the majority held that "the express advocacy restriction ... was an endpoint of statutory interpretation, not a first principle of constitutional law." Id. at 191-92.

It is undisputed that COPE qualifies as a "political committee" under Buckley's "major purpose" test. In its amended complaint, COPE states that all of its "expenditures, including expenditures advocating non-candidate specific issues, are made 'for the purpose of influencing elections.'" Furthermore, COPE's public filings demonstrate that the vast majority of its recent expenditures were made for the purpose of express advocacy. COPE has not argued to the contrary.

In light of Buckley and McConnell, we reject COPE's argument that groups qualifying as "political committees" under Buckley's "major purpose" test have a constitutional right to engage in issue advocacy without disclosure of vouchers substantiating their expenditures for that purpose. The Buckley Court's decision to adopt two different standards, one for political committees and candidates, and another for all other groups and individuals, is controlling.

The Supreme Court's language in McConnell confirms this dichotomy. The majority's description of Buckley as upholding a "general requirement that political committees disclose their expenditures ...." is patently inconsistent with plaintiff's suggestion that political committees are *not* subject to a general requirement to disclose their expenditures. We emphasize that the Court in Buckley limited the definition of "expenditure" to funds used for express advocacy only in the context of non-candidate individuals and groups other than political committees. The above reference in McConnell, made with respect to groups that qualify as political committees under the "major purpose test," points to the broad original definition of "expenditures" contained in the statute, that is, payments made "for the purpose of influencing any election for ... office."

COPE directs us to several additional cases purportedly establishing a bright line between issue advocacy and express advocacy even for groups qualifying as political committees under the "major purpose" test. See Colo. Republican Fed. Campaign Comm. v. FEC, 518 U.S. 604 (1996); Citizens Against Rent Control v. City of Berkeley, 454 U.S. 290 (1981); Wash. State Republican Party v. Wash. State Pub. Disclosure Comm'n, 141 Wash. 2d 245 (Wash. 2000). Yet the plaintiffs in each of these cases challenged only contribution and expenditure limits, which courts generally view as imposing considerably greater burdens on

political speech than those that simply mandate disclosure of expenditures.  See, e.g., Buckley, 424 U.S. at 22-23, 80-82.  Moreover, these cases involved only plaintiffs that, unlike COPE, were either political parties or groups involved solely in issue advocacy, none of which would qualify as political committees under Buckley's "major purpose" test.  As such, the cases cited by COPE are entirely distinguishable.

We conclude that the challenged statutory provisions, 25 Pa. Stat. Ann. § 3246(c) and Phila., Pa., Code § 20-1006, are not unconstitutionally vague or overbroad in violation of the First Amendment.  Accordingly, plaintiff has failed to state a claim upon which relief can be granted.

IV.

In its opposition brief to the instant motions to dismiss, COPE raises an additional challenge to the voucher provision contained in 25 Pa. Stat. Ann. § 3246(c).  It claims that the statute imposes constitutionally impermissible disparate treatment by placing burdens on political committees that are not shared by individuals.  COPE failed to raise this claim in its original or amended complaint.

Courts in our district have regularly refused to address "claims raised for the first time in a brief in opposition to a motion to dismiss."  Belmont Holdings Corp. v. Unicare Life & Health Ins. Co., Civ. A. No. 98-2365, 1999 WL

-13-

124389, at *4 (E.D. Pa. Feb. 5, 1999).  Instead, "[t]he proper means of raising claims that have inadvertently not been raised in the complaint is an amended complaint, not a brief in opposition to a motion to dismiss."  Sansom Comm. v. Lynn, 366 F. Supp. 1271, 1278 (E.D. Pa. 1973); see also Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc., Civ. A. No. 90-7952, 1992 WL 97826, at *12 (E.D. Pa. Apr. 30, 1992).  Therefore, we will not consider COPE's disparate treatment claim at this time.

V.

  We will grant the motions of defendants to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LOCAL 98 IBEW COMMITTEE ON       :     CIVIL ACTION
POLITICAL EDUCATION              :
                                 :
               v.                :
                                 :
PHILADELPHIA BOARD OF ETHICS,    :
et al.                           :     NO. 08-630
```

ORDER

AND NOW, this 9th day of July, 2008, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1)  the motion of defendants Philadelphia Board of Ethics and J. Shane Creamer, Jr., Chairman of the Philadelphia Board of Ethics, to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED;

(2) the motion of defendant Lynne Abraham, District Attorney of the City of Philadelphia, to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED;

(3) the motion of defendant Thomas Corbett, Attorney General of the Commonwealth of Pennsylvania, to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED;

   (4) the motion of defendant Pedro A. Cortes, Secretary of the Commonwealth of Pennsylvania, to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED; and

   (5) the motion of defendant the City of Philadelphia to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED.

          BY THE COURT:


          /s/ Harvey Bartle III
                  C.J.